IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE MARCIAL RODRIGUEZ DURON, | § § § | |
| *Petitioner*, | § § | |
| | § | No. 1:26-CV-00631-DAE |
| v. | § § | |
| VERGARA, *et al.*, | § § | |
| *Respondents*. | § § | |

## ORDER

Before the Court is Petitioner Jose Marcial Rodriguez Duron's

("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt.

# 1). The Court finds this matter suitable for disposition without a hearing. After

careful consideration of the parties' briefings and the relevant law, the Court

**GRANTS** the Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that

follow.

## FACTUAL BACKGROUND

Petitioner Rodriguez Duron is a citizen of Honduras who is currently

detained at the T. Don Hutto Detention Center in Taylor, Texas. (Dkt. # 1 at 2, 4.)

Petitioner first entered the United States in 1995. (Id. at 2.) He then was detained

at some point and granted voluntary departure to Honduras in 2016. (Dkt. # 5-3.)

Petitioner entered the United States for a second time without inspection over five

1

years ago in 2021, and alleges he entered to flee Honduras due to the violence and threats against him.  (Dkt. # 1 at 3.)  Since then, he has resided in the United States.  (Id.)

Petitioner was detained on March 1, 2026 by ICE after a police traffic stop.  (Id.)  His partner is a United States citizen, and he is expecting his first daughter with her in September of this year.  (Id.)  Petitioner has no violent criminal history.[1]  (Id.)  Petitioner alleges that he is "eligible for asylum and/or withholding of removal," but does not allege that he has a pending asylum application.  (Id. at 2.)  Petitioner is now being held without the opportunity for a bond hearing.[2]  (Id. at 1.)

PROCEDURAL HISTORY

On March 17, 2026, Petitioner filed his habeas petition.  (Dkt. # 1.)  On March 20, 2026, this Court ordered Respondents Miguel Vergara, Field Office Director, San Antonio Field Office, U.S. Immigrations and Customs Enforcement; Todd Lyons, Acting Director, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS");

---

[1] Respondents attach documentation suggesting that Petitioner was convicted of driving under the influence in 2015.

[2] Federal Respondents include the 2016 BIA decision denying Petitioner's appeal of a December 21, 2015 bond decision issued during his earlier detention.  (Dkt. # 5-2.)  However, because the last bond hearing was over ten years ago and was concerning a prior detention, the Court still finds that Petitioner is now held without the opportunity for a bond hearing.  (Id.)

and Charlotte Collins, Warden of the T. Don Hutto Detention Center (collectively, "Respondents") to show cause within three days as to why the petition should not be granted.  (Dkt. # 3.)  Respondents Miguel Vergara, Kristi Noem, and Pamela Bondi (herein, "Federal Respondents")[3] timely filed a response to the Petition on March 24, 2026.  (Dkt. # 5.)

## LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'"  Id. (quoting 28 U.S.C. § 2243).

---

[3] Respondent Collins, Warden of the T. Don Hutto Detention Center, has not joined the response.

3

DISCUSSION

In his Petition, Petitioner challenges his mandatory detention as a violation of his Fifth Amendment due process rights, the INA, agency regulations, and the Administrative Procedure Act.  (Dkt. # 1 at 5–7.)

As an initial matter, the Court finds that it has jurisdiction over this case for the same reasons stated in previous orders.  Campuzano v. Noem, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); Fabian-Granados v. Bondi, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); Silva v. Bondi, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026).  The Court also finds that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile."  See Lorenzo C. P., v. Noem, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); see also Shi v. Lyons, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025); (Dkt. # 6 at 1 (asserting that Petitioner is ineligible for bond before an immigration judge)).

With respect to the merits of the Petition, the Court finds that Petitioner's detention violates his right to procedural due process under the Fifth

4

Amendment of the United States Constitution.  Because the Court concludes that

Petitioner's detention is unlawful on this basis alone, it does not reach Petitioner's

other bases for relief. [4]  The Court's analysis proceeds in two steps: first, the Court

will discuss whether and to what extent procedural due process applies to

Petitioner; and second, the Court will analyze whether Petitioner's due process

rights were violated.

I.        Whether Petitioner is Entitled to Due Process Clause Protections

The Fifth Amendment's Due Process Clause prevents the Government

from "depriv[ing]" any "person . . . of liberty . . . without due process of law."

U.S. CONST. amend. V.  This right is not limited to United States citizens;

noncitizens are similarly entitled to due process under the Fifth Amendment.

Trump v. J. G. G., 604 U.S. 670, 673 (2025);  Demore v. Kim, 538 U.S. 510, 523

(2003). "Freedom from imprisonment—from government custody, detention, or

---

[4] To the extent Federal Respondents argue that Buenrostro-Mendez v. Bondi prevents this Court's review of the Petitioner's due process claims, the Court, like other courts that have considered the question, finds such an argument unpersuasive.  See Valencia Reyes v. Noem, et al., No. SA-25-CA-01921-XR, Dkt. # 7, at *6–8 (W.D. Tex. Feb. 25, 2026) (collecting cases).  Indeed, the Fifth Circuit's decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment.  See Buenrostro-Mendez, 2026 WL 323330.  The Government acknowledged as much in their oral arguments by stating: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here."  Oral Argument, Buenrostro-Mendez, 2026 WL 323330, at 44:56–45:11 (5th Cir. Feb. 3, 2026), available at https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Federal Respondents argue that, because Petitioner is entitled to no more due process than the INA gives him, he does not have a viable procedural due process claim. (See Dkt. # 5 at 3, 15–17, citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020)). First, the Court notes that while it is true as a matter of statutory construction that § 1225 permits mandatory detention, the question remains as to what process is due to people detained under that statute. Santiago v. Noem, No. EP-25-CV-361-KC, 2025 WL 2792588, at *7 (W.D. Tex. Oct. 2, 2025) ("In Jennings, the [Supreme Court] held the mandatory detention statutes . . . did not . . . require periodic bond hearings. . . But the Court expressly left open the constitutional due process question and remanded the case with instructions that the lower courts consider the constitutional issue in the first instance." (citing Jennings v. Rodriguez, 583 U.S. 281, 312 (2018))). It is for the courts to decide whether the constitutional protections afforded pursuant to a given statute are adequate. The mere existence of some protections under a statute does not relieve the Court of its responsibility to ensure that those protections are indeed constitutionally sufficient. See Jennings, 583 U.S. at 312; Counselman v. Hitchcock, 142 U.S. 547, 565 (1892), overruled on other grounds by Kastigar v.

6

United States, 406 U.S. 441 (1972) ("Legislation cannot detract from the privilege afforded by the constitution."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the due process clause applies, the question remains what process is due . . . The answer to that question is not to be found in the . . . statute.").

Second, insofar as Federal Respondents rely on Thuraissigiam to argue that Petitioner's due process rights are limited to those provided by statute because he is an "applicant for admission" who has never been formally admitted to the United States, the Court is not convinced.  (See Dkt. # 5 at 3, 15–17.)  In Thuraissigiam, the Supreme Court rejected a noncitizen's due process claim, explaining that people detained at or near the border are treated as "applicants for admission" and are afforded "only those rights regarding admission that Congress has provided by statute."  591 U.S. at 140.  However, as noted by other courts, while Thuraissigiam limited the scope of due process claims available to "applicants for admission," its statements and holdings must be read in context. See Lopez-Arevelo v. Ripa, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025) (discussing Thuraissigiam).  And when reading Thuraissigiam in context, the Court does not understand the decision to confine Petitioner's due process rights to only those set forth in the INA.  See id. at 681–84.

Several courts in this Circuit have distinguished <u>Thuraissigiam</u> from cases like Petitioner's for reasons this Court finds persuasive.  For example, in <u>Lopez-Arevelo</u>, the court rejected the respondents' attempts to rely on <u>Thuraissigiam</u> because: (1) <u>Thuraissigiam</u> addressed challenges to deportability rather than challenges to the fact or length of detention; and (2) the petitioner in <u>Thuraissigiam</u> did not have a significant presence in the United States.  801 F. Supp. 3d at 681–85.  Therefore, the <u>Lopez-Arevelo</u> court concluded, the petitioner could pursue his due process claim because the petitioner "challenge[d] his detention, not his deportability" and "because he was detained after years of presence in the United States, rather than on the threshold of initial entry."  <u>Id.</u> at 685.  The same reasoning applies here.  <u>See also</u> <u>Trump v. J. G. G.</u>, 604 U.S. 670, 673 (2025) (reaffirming that the Fifth Amendment entitles noncitizens to due process of law).

Federal Respondents also argue that Petitioner's procedural due process challenge to his detention is really a substantive due process challenge. (Dkt. # 5 at 12–13.)  The Court does not agree.  Here, Petitioner is challenging the process that is due to him before he can be deprived of a protected interest—his liberty.  That is squarely a procedural due process claim.  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332–33 (1976).

The Court does not find persuasive the cases Federal Respondents discuss in support of their argument. Federal Respondents first cite Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003) for the proposition that Petitioner cannot establish a procedural due process claim because his request for a bond hearing is immaterial to 8 U.S.C. § 1225(b), which mandates detention regardless of flight risk or danger to the community. (Dkt. # 5 at 13–14.) However, Doe arose in an entirely different context: a challenge to a sex offender registration statute. See Doe, 538 U.S. at 4. The Court therefore finds Doe inapposite. See Kevin Armando Gomez Hernandez, Petitioner, v. ICE et al., No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026) (finding Doe inapplicable to the immigration detention context); Chan v. Bondi, No. 3:25-CV-298, 2026 WL 388605, at *2 (W.D. Pa. Feb. 12, 2026) (same). Moreover, the Supreme Court has repeatedly affirmed that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." Bd. of Regents v. Roth, 408 U.S. 564, 569–70 (1972); accord Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 848 (1977); Mitchell v. W.T. Grant Co., 416 U.S. 600, 624 (1974); Lopez-Arevelo, 801 F. Supp. at 685 ("The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time."). Second, Federal Respondents cite an unpublished Fifth Circuit opinion, Wekesa v. U.S. Attorney, No. 22-10260, 2022

WL 17175818 (5th Cir. Nov. 22, 2022), in which a Fifth Circuit panel upheld the denial of a habeas petition that brought a due process challenge to prolonged mandatory detention.  Like the Lopez-Arevelo court, however, this Court does not find Wekesa persuasive.  Although the Wekesa court rejected the petitioner's due process challenge, it provided little to no reasoning for that decision.  See Wekesa, 2022 WL 17175818, at *1.  Furthermore, in reaching its conclusion, the Wekesa opinion relied only on Jennings, a decision which expressly left open the constitutional question.  See id.; Jennings, 583 U.S. at 312; see also Lopez-Arevelo, 801 F. Supp. at 683–84.  Accordingly, the Court does not find Wekesa's analysis compelling and declines to apply it here.

Therefore, for the reasons described above and following the sound rationale of other courts in this district, the Court concludes that Petitioner is able to bring a procedural due process claim.  See Lopez-Arevelo, 801 F. Supp. 3d at 681–85 (determining that Petitioner can bring a procedural due process claim); Santiago, 2025 WL 2792588, at *7–10 (same); Vieira v. De Anda-Ybarra, 806 F. Supp. 3d 690, 697–700 (W.D. Tex. 2025) (same); Hernandez-Fernandez v. Lyons, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *7–8 (W.D. Tex. Oct. 21, 2025) (same); Zafra v. Noem, No. EP-25-cv-521-DB, 2025 WL 3239526, at *2–3 (W.D. Tex. Nov. 20, 2025) (same); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7,

10

at *4–22 (same); <u>Longoria Mendoza v. Noem, et al.</u>, No. 5:26-CV-0728-JKP, Dkt. # 9, at *6–10 (W.D. Tex. Feb. 26, 2026) (same).

II.      <u>Whether Petitioner's Due Process Rights Have Been Violated</u>

Having found that Petitioner is entitled to due process protection under the Fifth Amendment, the Court turns to whether Petitioner's arguments are meritorious.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  <u>Mathews</u>, 424 U.S. at 333 (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)).  "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in <u>Mathews</u>[.]"  <u>Martinez v. Noem</u>, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Mathews</u>, 424 U.S. at 335.

The first factor weighs heavily in Petitioner's favor.  "'The interest in being free from physical detention' is 'the most elemental of liberty interests.'"  <u>Martinez v. Noem</u>, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting

11

Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)).  In this case, Petitioner lived his life in the United States free from custody for approximately twenty years prior to his 2016 detention, and for five years prior to his recent detention.  He used this freedom to develop a relationship with his partner, with whom he is expecting a baby in September.  "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'"  Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 755 (1987)).  This interest "deserves great weight and gravity" and thus weighs heavily in Petitioner's favor. See Vieira, 806 F.Supp.3d at 701.

On the second factor, courts consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks."  Martinez v. Noem, 2025 WL 2598379, at *3 (quoting Gunaydin v. Trump, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)).  Here, there is a high risk of erroneous deprivation of Petitioner's liberty since he is being detained without the opportunity for an individualized bond hearing, depriving him of the ability to contest the reasonableness of his detention.  See Vieira, 806 F.Supp.3d at 701 ("The risk lies in the automatic continued deprivation of liberty . . .").  There would be significant value added by additional safeguards, such as a bond hearing or pre-detention

12

notice, that would reduce the likelihood of an erroneous loss of liberty.  Thus, this factor also weighs in Petitioner's favor.

The third factor is the Government's interest.  See Mathews, 424 U.S. at 335.  The Government has a legitimate interest "in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community." Lopez-Arevelo, 801 F.Supp.3d at 686–87.  But such an interest could be adequately protected through individualized bond hearings—process that the Government finds unnecessary.  As another court in this District stated: "Respondents make no meaningful representation that the burden of providing this additional increment of process is beyond their ability.  Instead, they only maintain that due process does not require it." Valencia Reyes v. Noem et al., No. 5:25-cv-1921-XR, at *25 (W.D. Tex. Feb. 25, 2026).  Accordingly, as applied to this Petitioner, this factor is neutral.

In weighing all three factors, the Court finds the scale tips in Petitioner's favor; thus, Petitioner's detention without an opportunity to challenge his detention through an individualized assessment violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

III.   Appropriate Relief

On the issue of appropriate relief, the Court is persuaded that it need not depart from the "typical remedy" in habeas cases challenging the lawfulness of

detention, which "is, of course, release." See Munaf v. Geren, 553 U.S. 674, 693 (2008). Further, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do following Matter of Yajure Hurtado, 29 I&N Dec. 216, 220 (BIA 2025). The Court instead finds that the more appropriate remedy here is release. See Azua-Zuniga v. Bondi et al., No. 1:26-cv-287-RP (W.D. Tex. Feb. 20, 2026) (finding support for the same remedy under similar circumstances); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at 25 (same); Longoria Mendoza, No. 5:26-CV-0728-JKP, Dkt. # 9, at *17–18 (same).

Indeed, the Court notes its agreement that bond hearings are "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." Cruz-Reyes v. Bondi, No. 5:26-cv-60, 2026 WL 332315, at *6 (S.D. Tex. Feb. 3, 2026) (quoting Gonzalez v. Joyce, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025)). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." Gonzalez, 2025 WL 2961626, at *5.

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241." Davila Mercado v. Lyons, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *7 (W.D. Tex. Dec. 11, 2025). Here, as in Davila Mercado, Petitioner has not specifically sought any non-habeas relief and has paid only the minimal habeas filing fee. Accordingly, the Court denies any request for attorney's fees in this case. Id.; Aldana Perez v. Noem, et. al., No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); Barco v. Witte, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus. (Dkt. # 1.) It is **ORDERED** that:

1.  Respondents are **DIRECTED** to **RELEASE** Petitioner Jose Marcial Rodriguez-Duran from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on April 2, 2026**.

2.  Respondents must **NOTIFY** Petitioner's counsel by email (lagana.law@gmail.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3.  Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys

15

and set at a date agreed upon by both parties.  At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

4. The parties shall **FILE** individual status reports no later than **6:00 p.m. April 3, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, March 31, 2026.

_____
David Alan Ezra
Senior United States District Judge

16